In re COACHES SPORTS
TECHNIPLEX, INC.,
Debtor.

COACHES SPORTS TECHNIPLEX,
INC., Plaintiff,

v.

Thomas E. WILLIAMS, Tom Williams, Inc., Tom Williams Sports, Ltd. and Concorde Financial Corporation, Defendants.

Bankruptcy No. 86–0047–H2–11.
Adv. No. 86–0423.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Oct. 7, 1986.

Andrew G. Shebay, III, P.C., Andrew G. Shebay, III, Houston, Tex., for Coaches Sports Techniplex, Inc., debtor/plaintiff.

William T. Powell, P.C., William T. Powell, Houston, Tex., for Tom E. Williams, Tom Williams, Inc., Tom Williams Sports, Ltd. and Concorde Financial Corporation, defendants.

## MEMORANDUM DECISION AND ORDER ON APPLICATION FOR A PRELIMINARY INJUNCTION

EDWARD J. RYAN, Bankruptcy Judge.

A Chapter 11 debtor, Coaches Sports Techniplex, Inc. ("Coaches") seeks a preliminary injunction enjoining defendants, Thomas E. Williams ("Williams"), Tom Williams, Inc., Tom Williams Sports, Ltd. and Concorde Financial Corporation ("Concorde"), from:

a) engaging in any business or commercial activity, directly or indirectly, which is similar to or competitive with the business and commercial activity conducted by Coaches, anywhere in Harris County, Fort Bend County or Dallas County, Texas;

b) selling, offering to sell or promoting in any way any securities or interests in business activities which are the same or similar to or competitive with the business and commercial activities of Coach-es, anywhere in Harris County, Fort Bend County or Dallas County, Texas;

c) representing or offers to represent, directly or indirectly, any professional athlete in any business enterprise or promotion or negotiation relating to their professional athletic careers or endorsements of products.

The hearing commenced on July 17, 1986, adjourned until August 13 and concluded that same day.

Pursuant to Rule 7052 of the Bankruptcy Rules, the court makes the following:

### I.

### FINDINGS OF FACT

1. On or about November 19, 1984, Williams entered into a pre-incorporation agreement with Daniel K. Trevino, Jr. and Roger E. Trevino relating to the formation of Coaches. Pursuant to the pre-incorporation agreement, Coaches was incorporated and commenced business operations in the area of (a) recruiting professional, and soon to turn professional, athletes for the purpose of Coaches serving as their business manager and agent in contract negotiations and related activities; (b) constructing and operating a gymnasium for the purpose of soliciting private memberships from the general public, professional and non-professional athletes; and (c) developing and implementing specialized physical conditioning and therapy techniques.

2. Daniel K. Trevino, Jr., Roger E. Trevino, and Williams were the only directors and officers of Coaches. According to the pre-incorporation agreement, the responsibilities of the officers were as follows:

(a) Daniel K. Trevino, Jr. as the Chairman of the Board, was responsible and had authority to raise all monies required for the operations of the business, to obtain leases for facilities, and provide the overall management supervision, in consultation with the President and Executive Vice President of the corporation, of the overall operations of the corporation.

(b) Thomas E. Williams, as the Executive Vice President/Athletic Director, was responsible and had authority to direct, create, establish and implement all athletic, fitness and health programs, and to direct all player agency relationships.

(c) Roger E. Trevino, as the President, was responsible and had authority to direct, create, establish and implement, in consultation with the Chairman of the Board and the Executive Vice President/Athletic Director of the corporation, marketing and sales strategies and programs, membership drives, purchasing of equipment, fixtures, materials, supplies, etc.

The three were also the only shareholders of Coaches. However, no stock certificate was issued to Williams and it is unclear whether any stock was issued to the other two.

3. Williams was promised a $24,000 salary and an automobile when the facility became operational. From the opening of the gym until his resignation, Williams did not receive compensation from Coaches. Williams did receive an automobile in the spring of 1985.

4. Williams had been training athletes for many years prior to the formation of Coaches, individually and in classes. He is well recognized as being pre-eminent in his field. At the time the Coaches' gym opened, Williams transferred his exercise class to the facilities. Williams was not paid by the athletes in the class during the time that class was at Coaches.

5. Although use of the gym began in November 1984, the facilities were, and continued to be, inadequate. For example, there was no water fountain, no separate facilities for women, and the turf was torn. The inadequacy of the facilities made it impossible for Williams to fully implement his athletic program.

6. In May, 1985, Coaches began discussions and negotiations with Concorde for the purpose of Concorde acting as underwriter to raise investment capital for Coaches. These discussions and negotiations continued through the summer of 1985 without any agreement being reached. Williams participated in several of the meetings with Concorde.

7. In July 1985, Daniel K. Trevino, Chairman of the Board of Coaches and the officer responsible for raising capital for Coaches, informed Williams that Coaches was in desperate need of capital.

8. In July and August 1985, Williams presented to Daniel K. Trevino several potential investors in Coaches. However, after meeting with Trevino, these investors declined to participate.

9. In September or October, Williams contacted Concorde regarding the possibility of assisting Williams in financing his own venture to market and implement the Tom Williams System, a physical training program developed by Williams.

10. In an effort to start his venture, Williams on or about September 30, 1985, incorporated Tom Williams, Inc. Tom Williams, Inc. was to be the general partner of a limited partnership, Tom Williams Sports, Ltd. According to a Private Placement Memorandum dated November 20, 1985 which terminated December 31, 1985, the partnership would license, promote and act as consultant for the Tom Williams System. At no time was Tom Williams, Inc. or Tom Williams Sport, Ltd. funded sufficiently to become operational.

11. Williams' efforts to launch his own venture were unknown to Coaches. In all the circumstances, however, Williams was not unfair in exploring a realistic exploitation of his talents when his co-venturers disappointed him.

12. On December 16, 1985, Williams resigned as officer and director of Coaches. Williams also resigned from any other official position he held with Coaches.

13. On or about January 3, 1986, Coaches filed its petition for relief pursuant to Chapter 11 of the Bankruptcy Code under case number 86–00047–H2–11.

14. Williams continued to have an office and to operate from Coaches premises until

April 10, 1986. At that time, he and his family were told by Daniel K. Trevino not to return to the premises.

15. Williams had an exercise class of approximately sixty athletes when he moved to Coaches. He currently has a class of approximately twenty athletes.

16. On May 1, 1986, Coaches filed this adversary proceeding alleging breach of fiduciary duties and unfair competition against Williams and against the remaining defendants for fraud, conspiracy, tortious interference with contracts and unfair competition; and against all defendants for injunctive relief.

The court states the following:

## CONCLUSIONS OF LAW

1. *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974) set forth the standard for the issuance of a preliminary injunction. The four requisites to be examined by a court in considering a request for a preliminary injunction are:

    a. a substantial likelihood that the plaintiff will prevail on the merits;

    b. a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted;

    c. the threatened injury overweighs the threatened harm the injunction may do to the defendant; and

    d. granting the preliminary injunction will not disserve the public interest.

*Id.* at 572.

2. There is not a substantial likelihood that Coaches will prevail on the merits. Coaches failed to prove that Williams breached any fiduciary duty in attempting to set up his own venture. While it might have been more professional for Williams to have serious discussions with Concorde only after he resigned from Coaches, we do not find that Williams was taking advantage of an opportunity that was legally the property of Coaches. Williams did not unfairly compete with Coaches in the light of Coaches' woeful performance at the time Mr. Williams realized his co-venturers could not perform their part of the bargain.

Coaches stated four claims against the other defendants: fraud, conspiracy, tortious interference with contracts and unfair competition. These claims are also unsubstantiated.

3. Coaches failed to show a substantial threat that it will suffer irreparable injury if the injunction is not granted. In July 1985, Coaches was suffering from lack of funds. This problem was never resolved. It is not a viable business capable of implementing a program as planned. Williams is continuing in the same training business he had prior to the creation of Coaches. Tom Williams, Inc. and Tom William Sports Ltd. are not truly functioning organizations. Concorde proposes no threat to Coaches.

4. In balancing the harms, the threatened injury to Coaches does not outweigh the threatened harm the injunction may do the defendants. Coaches is currently operating with Roger Trevino and Steve Trevino performing the functions previously handled by Williams. Williams is a well noted and highly respected man in the field of athletic training and to deny him the right to work in that area would be a significant detriment to him.

5. Although the public interest requisite is not a significant factor in this case, it does appear that granting of the injunction would be contrary to public interest in denying a former employee to compete with his former employer unless prohibited by contract. *See Executive Tele-Communication Systems, Inc. v. Buchbaum,* 669 S.W.2d 400 (Tex.Civ.App.—Dallas 1984, no writ).

For want of an adequate showing, the application for a preliminary injunction is denied.

It is so ordered.